








VLS    7/28/03    10:16
3:01-CV-01387   GOLDSTEIN V. METABOLIFE INTL INC
*103*
*MEMFACTS.*

1  JEFFREY M. SHOHET (Bar No. 67529)
   MARK H. HAMER (Bar No. 156997)
2  DANIELLE S. FITZPATRICK (Bar No. 196593)
   **GRAY CARY WARE & FREIDENRICH LLP**
3  4365 Executive Drive, Suite 1100
   San Diego, CA 92121-2189
4  Tel: 858-638-6985
5  Fax: 858-677-1477

6  Attorneys for Defendants
7  Metabolife International, Inc., Michael Ellis, Scott Moberly, W.
   Robert Bradley, and Michael Blevins

8

9              UNITED STATES DISTRICT COURT

10           SOUTHERN DISTRICT OF CALIFORNIA

11

12

13  MICHAEL GOLDSTEIN, NEW            CV No.  01 CV 1387 JM (POR)
    CENTURY HEALTH ENTERPRISES,
14  INC., a Colorado corporation, DONALD
    BROWN, JR., GREGORY LOCKE, and
15  MARK COUGHLIN,                    **DEFENDANTS' MEMORANDUM OF
                                      CONTENTIONS OF FACT AND LAW**
16                                    [Local rule 16.1(f)(3)]
                 Plaintiffs,
17                                    Courtroom: Hon. Jeffrey T. Miller
18            v.                      Pretrial Conf.: August 15, 2003
                                      Time: 8:30 a.m.
19  METABOLIFE INTERNATIONAL, INC.,   Trial: September 16, 2003
    a California corporation, MICHAEL
20  ELLIS, SCOTT MOBERLY, W. ROBERT
    BRADLEY, and MICHAEL BLEVINS,
21
22               Defendants.

23

24

25

26

27

28

GRAY CARY WARE     SD1565390.1
& FREIDENRICH LLP  103221-3



                                                   01 CV 1387 JM (POR)

1    Defendants Metabolife International, Inc., Michael Ellis, Scott Moberly, W. Robert

2  Bradley and Michael Blevins ("Defendants") submit their Memorandum of Contentions of Fact

3  and Law as follows:

4  **I.    INTRODUCTION**

5    Plaintiffs are each former Premier Distributors of Metabolife products. Their First

6  Amended Complaint stems from Metabolife's decision to distribute Metabolife products through

7  national retail accounts as well as through its established direct distributor network.  Plaintiffs

8  claim this decision forced them out of business.  It was this decision, however, that saved

9  Metabolife, and in turn its distributors, from financial ruin.  Metabolife was faced with the choice

10  of broadening its distribution channels to compete with a host of knock-off products, or sitting

11  idle while its competitors rapidly gained market share.  Metabolife did what any fiscally

12  responsible company would do: it adapted to the demands of a new and volatile marketplace.

13    Plaintiffs injuries, if any, result not from Defendants' actions, but from the changing

14  nature of the market in which Metabolife 356® competes.  Metabolife adapted to the new

15  competitive conditions by exercising its right to expand distribution to include national retail

16  accounts while still protecting its independent distributors.  The changes Metabolife made were

17  necessary to keep the company viable.

18    Unfortunately, and despite already sluggish sales, Plaintiffs were unwilling to accept the

19  changes necessary to keep their own supplier in business.  In addition to claims for breach of

20  contract and fraud, Plaintiffs seek recovery based on the following theories: (1) violation of the

21  covenant of good faith and fair dealing; (2) negligent misrepresentation; (3) violation of

22  California's Franchise Investment Law; (4) violation of New York's GBL 349 (Coughlin only);

23  (5) violation of the Colorado Consumer Protection Act (Goldstein / New Century Health only);

24  (6) unjust enrichment; and (7) violation of the Robinson Patman Act.

25  /////

26  /////

27  /////

28  /////

GRAY CARY WARE          SD1565390.1                              -1-
& FREIDENRICH LLP       103221-3

01 CV 1387 JM (POR)

## II.   CONTENTIONS OF FACT

### A.   The Plaintiffs

1.   Defendants are informed and believe Plaintiff New Century Health Enterprises, Inc. ("New Century Health") is a Colorado corporation incorporated under the laws of the State of Colorado with its principal place of business in Aurora, Colorado.

2.   Defendants are informed and believe Plaintiff Michael Goldstein ("Goldstein") is the president of New Century Health and is a former Metabolife Premier Distributor.

3.   Defendants are informed and believe Plaintiff Donald Brown, Jr. ("Brown") resides in Rockwall, Texas and is a former Metabolife Premier Distributor.

4.   Defendants are informed and believe Plaintiff Gregory Locke ("Locke") resides in Shreveport, Louisiana and is a former Metabolife Premier Distributor.

5.   Defendants are informed and believe Plaintiff Mark Coughlin ("Coughlin") resides in Cheektawga, New York and is a former Metabolife Premier Distributor.

### B.   The Defendants

6.   Defendant Metabolife International, Inc. ("Metabolife") is a privately held corporation incorporated under the laws of the State of California.  Metabolife has its principal place of business in San Diego, California.

7.   Defendant Michael Ellis ("Ellis") is a shareholder of Metabolife and is a member of Metabolife's Board of Directors.

8.   Defendant Scott Moberly ("Moberly") has been Metabolife's Director of Sales from April 1, 1999 to the present.

9.   Defendant W. Robert Bradley ("Bradley") is a shareholder of Metabolife and is a member of Metabolife's Board of Directors.

10.   Defendant Michael Blevins ("Blevins") is a shareholder of Metabolife and is a member of Metabolife's Board of Directors.

/////

/////

## C.    The Contracts.

11.    Plaintiff Goldstein / New Century Health entered into a Premier Distributor Agreement ("PDA") with Metabolife on or about July 3, 1998.  Goldstein / New Century Health's contract contains an integration clause at Paragraph 7.4.

12.    Plaintiff Brown entered into a PDA with Metabolife on or about February 16, 1998.  Brown's contract contains an integration clause at Paragraph 8.6.

13.    Plaintiff Locke entered into a PDA with Metabolife on or about July 7, 1998.  Locke's contract contains an integration clause at Paragraph 7.4.

14.    Plaintiff Coughlin entered into a PDA with Metabolife on or about March 12, 1998.

15.    These contracts permitted Plaintiffs to open and operate kiosks devoted to the sale of Metabolife products.  Coughlin's contract contains an integration clause at Paragraph 8.6.

16.    None of the Plaintiffs' PDAs with Metabolife prohibit Metabolife from selling to national retail chain stores.

17.    Plaintiffs were also bound by the Distributor Guidelines, which form part of their contracts with Metabolife.

18.    The Distributor Guidelines expressly permit Metabolife to adopt, amend, rescind, supplement, alter or modify its rules and regulations:

> Metabolife shall have no duty to enforce these rules and regulations for the personal benefit of any individual distributor, and Metabolife's rules and regulations are not enforceable by anyone except Metabolife. *Metabolife can adopt, amend, rescind, supplement, alter or modify its rules and regulations in its sole judgment.  These rights are reserved by Metabolife in order to promote its business goals and objectives and to be able to adjust to any changes in federal or state laws and changes in the marketplace.*  Metabolife will have the right to exercise those rights on a case-by-case basis as it believes appropriate.
> Metabolife will have the right to amend these Distributor Guidelines from time to time in such ways as it deems necessary in its sole discretion.
>
> In order for Metabolife to stay competitive in the marketplace, the Premier Distributor Program and performance incentives are subject to change from time to time.

1   The Agreement contains the entire understanding between
    Metabolife and its distributors. **Metabolife makes no**
2   **representations or warranties concerning Metabolife's business**
    **plan** or its product except as expressly set forth in the Agreement.

3

4   19.    The Guidelines do not contain an express provision precluding Metabolife

5   from selling its products through national retail chain stores.

6   20.    Goldstein and Locke's contracts expressly reserved Metabolife's right to

7   sell through "National Accounts," where "National Accounts" is defined as "companies with

8   places of business in multiple geographic territories." The "National Accounts" provision

9   allowed Metabolife to sell Metabolife products to National Accounts located within the

10  distributor's exclusive territory, as defined by the contracts. Plaintiffs Locke and Goldstein were

11  granted an exclusive territory, requiring the contractual exclusion of National Accounts from such

12  territory. Plaintiffs Brown and Coughlin, however, were not granted exclusive territories, thus

13  obviating the need to refer to Metabolife's right to sell to National Accounts.

14  **D.    Market Conditions During Relevant Period.**

15  21.    Plaintiffs opened Metabolife Kiosks in several malls throughout the

16  country and had successful businesses for a time. In March of 1999, Metabolife had record sales,

17  as did Plaintiffs. Sales of Metabolife products, however, began to slip thereafter. By May of

18  2000, Metabolife was experiencing seriously declining sales and losing market share to "knock-

19  off" products that were sold at lower prices on retail store shelves across the country.

20  22.    In or about May 2000, after various efforts to reverse the slide were

21  unsuccessful, Metabolife began considering the possibility of adding retail chains to its

22  distribution channel. Previously, Metabolife was steadfastly committed to remaining a "network

23  marketing" company that sold through its independent distributors, and Metabolife employees

24  had occasionally made oral statements to that effect. Nonetheless, it soon became clear that the

25  company no longer had that luxury. Arthur Anderson confirmed the company's fears that it

26  would be out of business by the end of the year unless it changed its course. Alan Cox of

27  National Economic Research Associates ("NERA") came to the same conclusion after conducting

28  an independent analysis of Metabolife's financial position.

1    23.    So long as Metabolife's operating costs were covered, it was in

2  Metabolife's economic interest to continue to sell product through its dealer network.

3    **E.    Circumstances of Decision to Add Retail Distribution.**

4    24.    In May of 2000, and based on advice it would be facing bankruptcy in a

5  matter of months, Metabolife began exploring the option of selling through retail chains in May

6  of 2000.

7    25.    The Board of Directors voted on June 21, 2000 to add retail distribution to

8  the company's marketing model.

9    26.    Metabolife launched its retail distribution on August 1, 2000.  According to

10  industry personnel, Metabolife's retail launch was the fastest in history.

11    **F.    Timing of Announcement.**

12    27.    Metabolife publicly announced the addition of retail to its distribution

13  model at a distributor meeting on July 29, 2000 – about a month after making the decision.

14    28.    Metabolife developed a proposal to employ its distributors as consultants

15  during the transition into the retail channel.  The proposal was embodied in a Consultant

16  Agreement, which was finalized on July 29, 2000, the day of the announcement.

17    29.    The basic elements of the Consultant Agreement are as follows: Metabolife

18  set aside $40 million dollars over two years to pay out to distributors willing to become paid

19  consultants for the company.

20    **G.    Plaintiffs' Admissions Relating to Causation and Damages.**

21    30.    Plaintiff Goldstein / New Century Health alleges that his business closed

22  because of Metabolife's decision to sell through retail outlets and the lack of promised advertising

23  support.

24    31.    Plaintiff Brown alleges that his business closed because of Metabolife's

25  decision to sell through retail outlets and the lack of promised advertising support.

26    32.    Plaintiff Locke alleges that his business closed because of Metabolife's

27  decision to sell through retail outlets and the lack of promised advertising support.

28  /////

GRAY CARY WARE
& FREIDENRICH LLP

SD1565390.1
103221-3

-5-

01 CV 1387 JM (POR)

1       33.     Plaintiff Coughlin alleges that his business closed because of Metabolife's

2  decision to sell through retail outlets and the lack of promised advertising support.

3       34.     Plaintiff Goldstein testified "[t]he threat was once [Metabolife] go[es] retail

4  and they are in the stores we are all out of business."  He further testified that this would be true

5  whether Goldstein paid $17.99 for Metabolife 356® or $24.99.

6       35.     Plaintiff Locke testified that he did not feel he could compete with retailers

7  for sales of Metabolife 356® even if he were able to purchase the product for less than retailers

8  paid.

9       36.     Plaintiff Coughlin testified that he could not afford to stay operational even

10  if he bought Metabolife 356® at the same price retailers paid.

11      37.     Plaintiff Brown testified that on "July 29 [Metabolife] began selling their

12  product from the shelves of mass merchandisers, putting all of the distributors out of business."

13  **III.    CONTENTIONS OF LAW**

14      **A.    Count No. 1: Violation of the Clayton Act, 15 U.S.C. § 13 (1994).**

15          1.     In order to obtain damages for price discrimination in violation of the

16  Robinson-Patman Act, each plaintiff must show: (1) two or more contemporaneous sales by the

17  same seller to the plaintiff and a competing buyer; (2) at different prices; (3) of commodities of

18  like grade and quality; (4) where at least one of the sales was made in interstate commerce; (5)

19  the price discrimination had the requisite effect upon competition generally; and (6) the price

20  discrimination caused injury to the plaintiff.  *See Rutledge v. Electric Hose & Rubber Co.*, 511

21  F.2d 668, 677 (9th Cir. 1975) (citations omitted).

22          2.     Each plaintiff seeking damages must make "some showing of actual injury

23  attributable to something the antitrust laws were designed to prevent."  *J. Truett Payne Co. v.*

24  *Chrysler Motors Corp.*, 451 U.S. 557, 562 (1981).  Each such plaintiff "must, of course, be able

25  to show a causal connection between the price discrimination in violation of the Act and the

26  injury suffered."  *Id.* (*quoting Perkins v. Standard Oil Co.*, 395 U.S. 642, 648 (1969)).  Therefore,

27  Plaintiffs' injury and damages cannot be presumed from a showing of illegal discrimination

28  alone. *See id.* at 563.

**B.   Count 2: Breach of Contract.**

3.   Plaintiffs assert that Metabolife breached its contracts with each of them by adding retail chain stores to its distribution channels.  To recover damages for breach of contract, Plaintiffs must prove the following: (1) a valid and enforceable contract; (2) plaintiffs' performance (unless excused); (3) defendants' breach; and (4) resulting damage.  *See Cariau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990).

4.   Further, a claim for breach must be based on the non-performance of express promises or legal duties contained in an integrated contract.  *See Traumann v. Southland Corp.*, 858 F. Supp. 979, 982 (N.D. Cal. 1994) (applying California Law).

**C.   Count 3: Breach of the Covenant of Good Faith and Fair Dealing.**

5.   In the commercial context, the duty of good faith and fair dealing simply requires businesses to act in a commercially reasonable manner.  *See Foothill Props. v. Lyon/Copley Corona Assocs.*, 46 Cal. App. 4th 1542, 1552 (1996); *Ellis v. Chevron, U.S.A., Inc.*, 201 Cal. App. 3d 132, 139 (1988).  To prevail, plaintiffs are required to prove that Metabolife acted dishonestly, outside accepted commercial practices, with a bad motive, or in an unreasonable manner that was arbitrary, capricious, or inconsistent with the reasonable expectations of the parties.  *See In re Sizzler Rest. Int'l, Inc.*, 225 B.R. 466, 474 (C.D. Cal. 1998).  Good cause has been "uniformly interpreted" as meaning subjective good faith – that is, "an honest evaluation of the [defendant's] own business needs." *Vasco v. Mobil Oil Corp.*, 698 F. Supp. 102, 104 (D. Md. 1988).  Courts will not second-guess a defendant's good faith business decision, even if it hurts the plaintiff's business. *See, e.g., Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297-99 (5th Cir. 1997) (no breach of the implied covenant despite a franchisor's national marketing strategy and concept that caused an individual franchise to lose business).

6.   The implied covenant, however, is "limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract." *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (1992).  It rests upon the existence of a specific contractual obligation, and "is read into

1  contracts in order to protect express covenants or promises of the contract . . . ." *Foley v.*

2  *Interactive Data Corp.*, 47 Cal. 3d 654, 683-84, 689-690 (1988).

3         7.     Further, the implied covenant cannot be used to vary express terms.

4  *Carma Dev. Marathan Dev. Calif.*, 2 Cal. 4th 342, 374 (1992).  "No obligation can be implied . . .

5  which would result in the obliteration of a right expressly given under a written contract." *Third*

6  *Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808 (1995).  Accordingly, the implied covenant

7  of good faith and fair dealing does not operate to edit out express terms of an agreement or to

8  deprive a party of the benefit of those express terms. *Price v. Wells Fargo Bank*, 213 Cal. App.

9  3d 465, 479 (1989).  Similarly, the implied covenant of good faith and fair dealing does not

10  impose an affirmative duty on a party to forbear from enforcing rights expressly given under the

11  contract.  *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 56 n.10

12  (2002); *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 479 (1989).

13      **D.**     **Count 6: Fraud.**

14         8.     The elements of fraud are: (1) a misrepresentation of a past or existing fact

15  (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to

16  defraud (induce reliance); (4) justifiable reliance; and (5) resulting damage.  *See Lazar v.*

17  *Superior Court*, 12 Cal. 4th 631, 638 (1996) (setting forth elements of fraud claim).

18         9.     Evidence of alleged "false promises" that contradict the terms of the

19  parties' contracts violates the parol evidence rule and is, therefore, inadmissible. *See Brinderson*

20  *Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 280-81 (9th Cir. 1992) ("[I]f the

21  false promise relates to the matter covered by the main agreement and contradicts or varies the

22  terms thereof, any evidence of the false promise directly violates the parol evidence rule and is

23  inadmissible.").

24        10.    A plaintiff cannot prevail on a claim for fraud or negligent

25  misrepresentation unless he can provide facts which demonstrate that a statement was false at the

26  time it was made. *See, e.g., Miron v. Herbalife Int'l, Inc.*, 2001 WL 564338, at *2 (9th Cir.

27  May 24, 2001).  Here, Plaintiffs have no such evidence.

28  /////

GRAY CARY WARE
& FREIDENRICH LLP     SD1565390.1
103221-3          -8-             01 CV 1387 JM (POR)

11.     A representation is not actionable unless it relates to a matter of existing or past fact, and not merely to an expression of intention to act in the future, a prediction of future events, or an expression of promise. *See Richard P. v. Vista Del Mar Child Care Servs.*, 106 Cal. App. 3d 860, 865 (1980).

12.     Nondisclosure is actionable only if the undisclosed fact is material and the defendant had a duty to disclose it. *See Cal. Civ. Code § 1710(3); see also Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612-13 (1992). There are four circumstances in which nondisclosure may constitute actionable fraud: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).

13.     A company has no duty to disclose a transaction before it is finally consummated. *See, e.g., In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996); *Greenfield v. Heublin, Inc.*, 742 F.2d 751 (3rd Cir. 1984) (no duty to disclose potential merger until reach agreement as to fundamental terms of price and structure); *see also Starkman v. Marathon Oil Co.*, 772 F.2d 231, 238 (6th Cir. 1985) (affirmative statement made that company would remain independent, but during that time was engaged in merger negotiations and later merged, did not have duty to disclose negotiations).

**E.      Count 7: Negligent Misrepresentation.**

14.     (1) a misrepresentation of a past or existing material fact; (2) without reasonable grounds for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages. *See Fox v. Pollack*, 181 Cal. App. 3d 154, 962 (1986).

/////

/////

/////

**F.     Count 8:  Colorado Consumer Protection Act ("CCPA") (Goldstein / New Century Health).**

15.     Plaintiff Coughlin has alleged violations of the following provisions of the CCPA, which prohibits deceptive trade practices:

16.     Colorado Revised Statutes section 6-1-105(1)(e): knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services or property or a false representation as to the sponsorship, approval, status, affiliation, or connections of a person therewith;

17.     Colorado Revised Statutes section 6-1-105(1)(g): represents that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another

18.     Colorado Revised Statutes section 6-1-105(1)(u): fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction

19.     There are five distinct elements to a private cause of action under the CCPA: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury. *See Martinez v. Lewis*, 969 P.2d 213 (1998); *Hall v. Walter*, 969 P.2d 224 (1998).

20.     To prove a private cause of action under the CCPA, a plaintiff must show that the defendant engaged in an unfair or deceptive trade practice. *See* Colorado Revised Statutes § 6-1-101.*et seq.*  Either proof of a misrepresentation or proof that the representation had the capacity to deceive will satisfy the deceptive trade practices requirement. *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142,148 (Colo. 2003).  A promise cannot

/////

1   constitute a misrepresentation unless the promisor did not intend to honor it at the time it was

2   made. *See id.*

3        21.    Courts consider the following factors to determine whether a challenged

4   practice significantly impacts the public within the context of a CCPA claim: (1) the number of

5   consumers directly affected by the challenged practice, (2) the relative sophistication and

6   bargaining power of the consumers affected by the challenged practice, and (3) evidence that the

7   challenged practice has previously impacted other consumers or has the significant potential to do

8   so in the future. *See Martinez*, 969 P.2d at 222.

9   **G.    Count 10:  New York General Business Law ("GBL") (Coughlin Only).**

10        22.    To establish a claim under New York General Business Law section 349,

11   one must to prove that a "consumer-oriented" practice was deceptive or misleading in a material

12   respect, and that plaintiffs were injured thereby. *Champion Home Builders Co. v. ADT Sec.*

13   *Servs., Inc.*, 179 F. Supp. 2d 16, 27 (N.D.N.Y. 2001).  A claim under GBL section 349 requires

14   allegations that Defendants' conduct is "consumer oriented."  *See Occidental Chem. Corp. v.*

15   *OHM Remediation Serv. Corp.*, 173 F.R.D. 74, 76-77 (W.D.N.Y. 1997); *Oswego Laborers' Local*

16   *214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995) (holding that a claim

17   under GBL section 349 must, "as a threshold matter, . . . charge conduct of the defendant that is

18   consumer-oriented.").  "Consumer-oriented" conduct is conduct that "potentially affects similarly

19   situated consumers." *Oswego Laborers'*, 85 N.Y.2d at 26-27.  The practices alleged must "have a

20   broader impact on consumers at large." *Id.* at 25.

21        23.    However, a plaintiff <u>cannot</u> allege a deceptive act or practice based on the

22   reservation of a right disclosed in a contract. *Lewis v. Hertz Corp.*, 581 N.Y.S.2d 305, 307 (N.Y.

23   App. Div. 1992) (affirming summary judgment where challenged business practices were

24   disclosed in car rental contract); *see also Sands v. Ticketmaster-New York, Inc.*, 207 A.D.2d 687,

25   687 (N.Y. App. Div. 1994) (affirming summary judgment where defendant's allegedly excessive

26   fees were disclosed prior to service).

27   /////

28   /////

**H.   Punitive Damages.**

24.   To justify an award for punitive damages, plaintiffs must prove "by *clear and convincing evidence* that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a) (emphasis added).  Punitive damages are *not* available in California for simple breaches of contract, no matter how willful. *See Tibbs v. Great Am. Ins. Co.*, 755 F.2d 1370, 1375 (9th Cir. 1985).  Moreover, punitive damages are recoverable only where the defendant "act[ed] with the intent to vex, injure, or annoy." *Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 922 (1978) (citation omitted).

**I.   Measure of Damages**

25.   The measure of damages for breach of contract is the amount which will compensate the party for the detriment proximately caused or which, in the ordinary course, would likely result therefrom.  Civ. Code § 3300.  Damages cannot be recovered that are not clearly ascertainable in nature and origin.  Civ. Code § 3301.  Punitive or exemplary damages cannot be recovered for breach of contract.  Civ. Code § 3294.  A party injured by a breach of contract is required to do everything reasonably possible to mitigate his own loss and thus reduce the damages for which the other party has become liable. *See Johnson v. Comptoir etc.*, 135 Cal. App. 2d 683, 689 (1955).  Moreover, Plaintiffs cannot recover for harm they could have foreseen and avoided by reasonable effort and without undue expense. *See Spurgeon v. Drumheller*, 174 Cal. App. 3d 659, 665 (1985).

26.   For tort claims under theories of breach of an implied covenant of good faith and fair dealing, fraud and negligent misrepresentation, damages may be recovered for all detriment proximately caused by the tort.  Civ. Code § 3333.

27.   Should Defendants be found liable under the Robinson Patman Act, the appropriate measure of damage is Plaintiffs' lost profits resulting from the antitrust violation measured by Plaintiffs' actual net profits earned in a set period of time compared to Plaintiffs' actual net profits (or lost) thereafter. *See Bigelow v. RKO Radio Pictures*, 327 U.S. 251 (1946). Plaintiffs are not entitled to so-called "automatic damages" of three times the amount of the price discrimination. *See J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557 (1981).

1  Moreover, a plaintiff may not recover damages for any portion of its injury that it could have

2  avoided through the exercise of reasonable care and prudence.  *See, e.g., Golf City, Inc. v. Wilson*

3  *Sporting Goods Co.*, 555 F.2d 426, 436 (5th Cir. 1977).

4          28.    The measure of damage under the Colorado Consumer Protection Act is an

5  amount equal to the sum of: (a) the greater of: (I) the amount of actual damages sustained; or (II)

6  hive hundred dollars; or (III) three times the amount of actual damages sustained, if it is

7  established by clear and convincing evidence that such person engaged in bad faith conduct; plus

8  (b) in the case of any successful action to enforce said liability, the costs of the action together

9  with reasonable attorney fees as determined by the court.  C.R.S. § 6-1-113.

10         29.    The measure of damage under the New York General Business Law

11 section 349 is actual damages or fifty dollars, whichever is greater. The court may, in its

12 discretion, increase the award of damages to an amount not to exceed three times the actual

13 damages up to one thousand dollars, if the court finds the defendant willfully or knowingly

14 violated this section.  Once actual damages exceed $1,000, there can be no increase for punitive

15 damages.  *See Hart v. Moore*, 587 N.Y.S.2d 477 (1992).

16 **IV.    ABANDONED ISSUES.**

17        Defendants believe that Plaintiffs have abandoned the following issues raised in their First

18 Amended Complaint:

19        Count 4: Violation of the California Unfair Practices Act.  The Court dismissed this claim

20 without prejudice on March 20, 2003.

21        Count 5: Violation of the California Corporate Code, Sections 31200 et seq.  Plaintiffs

22 have raised no argument in opposition to Defendants' Motion for Summary Judgment on this

23 Claim.

24        Count 9: Violation of the Texas Deceptive Trade Practices Act. The Court dismissed this

25 claim without prejudice on March 20, 2003.

26        Count 11: Violation of the Louisiana Unfair Trade Practices and Consumer Protection

27 Law.  The Court dismissed this claim without prejudice on March 20, 2003.

28 /////

1    <u>Count 12</u>: Unjust Enrichment.  Plaintiffs have raised no argument in opposition to

2    Defendants' Motion for Summary Judgment on this Claim.

3    **V.    WITNESS LIST**

4         Defendants' list of percipient witnesses expected to testify at trial is attached as exhibit A.

5    This witness list is subject to revision prior to the pre-trial order.  Defendants reserve the right to

6    call additional witnesses for impeachment or rebuttal.

7         A list of Defendants' expert witnesses and the substance of the expert opinion testimony

8    the witnesses are expected to give, and the experts' qualifications, is attached as Exhibit B.  The

9    expert witness list is subject to revision prior to the pre-trial order.

10   **VI.   LIST OF EXHIBITS**

11        Defendants' list of exhibits expected to be offered at trial is attached as Exhibit C.  This

12   list is subject to revision prior to the pre-trial order.  Defendants reserve the right to add or delete

13   exhibits from this list, including, without limitation, the right to use impeachment or rebuttal

14   exhibits.

15

16   Dated: July 24, 2003

17                                    GRAY CARY WARE & FREIDENRICH LLP

18

19                                    By _____

20                                       JEFFREY M. SHOHET
                                         MARK H. HAMER
21                                       DANIELLE S. FITZPATRICK
                                         Attorneys for Defendants
22                                       METABOLIFE INTERNATIONAL, INC.,
                                         MICHAEL ELLIS, SCOTT MOBERLY, W.
23                                       ROBERT BRADLEY and MICHAEL
                                         BLEVINS
24

25

26

27

28

**EXHIBIT A**

EXHIBIT A

**Case Title:** <u>MICHAEL GOLDSTEIN, et al.</u> v. <u>METABOLIFE INTERNATIONAL, INC.,</u> <u>et</u> <u>al.</u> **Case No.:** <u>CV No.  01 CV 1387 R (POR)</u>

LIST OF DEFENDANTS' EXHIBITS

| NUMBER | DATE MARKED | DATE ADMITTED | DESCRIPTION |
|---|---|---|---|
| Defendants Intend To Offer The Following Documents At Trial | | | |
| A | | | Distributor Application and Agreement between Metabolife International, Inc. and Mike J. Goldstein (METGOLD 001694-1695) |
| B | | | Premier Distributor Agreement between Metabolife International, Inc. and Mike Goldstein/New Century Health Enterprises, Inc., dated July 3, 1998 (METGOLD 001725-1731) |
| C | | | Distributor Application and Agreement between Metabolife International, Inc. and Donald T. Brown, dated December 11, 1997 (METGOLD 000753-755) |
| D | | | Premier Distributor Agreement between Metabolife International, Inc. and Donald T. Brown, Jr., dated February 16, 1998 (DTB 000010-23) |
| E | | | Premier Distributor Agreement between Metabolife International, Inc. and Gregory Ray Locke, dated July 7, 1998 (METGOLD 002115-2121) |
| F | | · | Distributor Application and Agreement between Metabolife International, Inc. and Mark Coughlin, dated February 3, 1998 (METGOLD 001366-1367) |
| G | | | Premier Distributor Agreement between Metabolife International, Inc. and Mark Coughlin, dated March 12, 1998 (METGOLD 001378-1387) |
| H | | | 1995 Metabolife Distributor Guidelines (METGOLD 000529-610) |
| I | | | Expert Report of Alan J. Cox, Ph.D., dated May 19, 2003 |
| J | | | Arthur Anderson Report Prepared for Metabolife (METGOLD 003020-3035) |
| K | | | Metabolife International, Inc. Independent Consultant Agreement (GRL 0000107-111) |

EXHIBIT _A_  PAGE _15_

| NUMBER | DATE MARKED | DATE ADMITTED | DESCRIPTION |
|---|---|---|---|
| L | | | Minutes of a Meeting of the Board of Directors of Metabolife, International, Inc., dated June 21, 2000 (METGOLD 000513-514) |
| M | | | Table Identifying Metabolife International, Inc.'s Media Expenses (1998- 2000) (METGOLD 005168-5169) |
| N | | | Table Titled "*Goldstein v. Metabolife: Allegations of Fraud/Misrepresentations*" Summarizing Plaintiffs' Allegations of Fraud |
| O | | | Plaintiff Michael Goldstein's Answers to Defendants' First Set of Interrogatories, dated October 21, 2002 |
| P | | | Plaintiff Donald Brown's Answers to Defendants' First Set of Interrogatories, not dated |
| Q | | | Plaintiff Gregory Locke's Answers to Defendants' First Set of Interrogatories, dated October 21, 2002 |
| R | | | Plaintiff Mark Coughlin's Answers to Defendants' First Set of Interrogatories, dated October 21, 2002 |
| S | | | Metabolife Announcement, dated February 24, 2000 (METGOLD 002764) |
| T | | | Memorandum from Scott E. Moberly to Independent Distributors (METGOLD 002753) |
| U | | | Letter from Metabolife to Distributors, dated August 1, 2000 (GRL 0000091-92) |
| V | | | Letter from Scott E. Moberly to Distributors (GRL 0000190-192) |
| W | | | Table Summarizing Metabolife's Retail Sales for 1998 (METGOLD 005128) |
| X | | | Table Summarizing Metabolife's Retail Sales for 1999 (METGOLD 005129) |
| Y | | | Table Summarizing Metabolife's Retail Sales for 2000 (METGOLD 005130, 5150-5151) |
| Z | | | Table Summarizing Metabolife's Retail Sales for 2001 (METGOLD 005152-5153) |
| AA | | | Table Summarizing Metabolife's Retail Sales for 2002 (METGOLD 005154-5155) |
| BB | | | Distributor Application and Agreement Addendum |

| NUMBER | DATE MARKED | DATE ADMITTED | DESCRIPTION |
|---|---|---|---|
| CC | | | Metabolife International, Inc. Statement of Policies and Procedures, Section 1 – Corporate Mission Statement (pp. 45-46) |
| DD | | | Declaration of Michael Goldstein, dated June 25, 2003 |
| EE | | | Declaration of Mark Coughlin, dated June 26, 2003 |
| FF | | | Declaration of Donald Brown, Jr., dated June 25, 2003 |
| GG | | | Declaration of Gregory Locke, dated June 26, 2003 |
| HH | | | Rebuttal Report of Alan J. Cox, Ph.D., dated June 2, 2003 |
| Defendants May Offer The Following Documents At Trial If The Need Arises | | | |
| II | | | Statement of Work from Arthur Andersen to Metabolife International, Inc. (AA 00001-5) |
| JJ | | | Metabolife Cash Flow Scenario – Reality (AA 00057-58) |
| KK | | | Metabolife Cash Flow Scenario – Doom (AA 00060-61) |
| LL | | | Metabolife Cash Flow Scenario – Doom (AA 00074-75) |
| MM | | | Arthur Andersen Memo regarding Cash Burn Analysis MET316 (AA 00078-79) |
| NN | | | Metabolife Revenue & Expenses vs. Cash (AA 00091-128) |
| OO | | | Acosta Logistics Meeting 6/29/00 – GROCERY, Meeting Notes  (AA 00141-171) |
| PP | | | Daily Sales & Time Sheet Reports for Cortana Mall, dated July 1, 2000 and [date illegible] (DB 02363, 02366) |
| QQ | | | Employee Shift Reports for Cortana Mall, dated July [illegible] 2000 and July 1, 2000 (DB 02364-2365) |
| RR | | | Daily Sales & TimeSheet Report for Holyoke Mall, dated August 1, 2000 (DB 03158) |
| SS | | | Employee Shift Report for Holyoke Mall, dated August 1, 2000 (DB 03159) |
| TT | | | Gold Miner Return Authorization Form, Gold Minder ID Number 146, undated (DB 03160) |
| UU | | | Employee Shift Report for Holyoke Mall, dated August 2, 2000 (DB 03161) |
| VV | | | Retail Sales Receipt for Holyoke Mall, dated August 4, 2000 (DB 03188) |

| NUMBER | DATE MARKED | DATE ADMITTED | DESCRIPTION |
|---|---|---|---|
| WW | | | Gold Miner Return Authorization Form, Gold Minder ID Number 146, undated (DB 03189) |
| XX | | | Daily Sales & TimeSheet Report for Holyoke Mall, dated September 1, 2000 (DB 10311) |
| YY | | | Daily Sales & TimeSheet Reports for Sunrise Square Center, dated July 1, 2000 through July 15, 2000 (DB 15227-15238) |
| ZZ | | | Gold Miner Return Authorization Form, Gold Minder ID Number 146, undated (DB 15403) |
| AAA | | | Donald T. Brown Schedule C Form 1040 1998 (DTB 0000079-80) |
| BBB | | | Commission Statements from Metabolife to Donald Brown, 2/99-11/99 (DTB 0000106; 126; 131; 146; 167; 177; 186) |
| CCC | | | Metabolife Int. Rebate Reports for Donald T. Brown dated Oct.-Nov. 1999 (DTB 0000196-199) |
| DDD | | | 1099 Forms from Metabolife to Donald Brown 1999-2000 (DTB 0000206-207) |
| EEE | | | Blank Independent Consultant Agreement with Schedule A (DTB 000046-52) |
| FFF | | | Form 1099 and 1999 Schedule C, Profit or Loss from Business for Donald Brown (DTB 0000081-83) |
| GGG | | | Donald T. Brown Metabolife Products Distributor, Financial Statements 9/30/99 (DTB 0000084-87) |
| HHH | | | Commission Statements and copies of checks for Donald Brown 2/99-12/99 (DTB 0000106-195) |
| III | | | DBE Profit and Loss 12/31/98-12/31/00 (08/17/01) (DTB 0000208-216) |
| JJJ | | | Berkshire Mall Profit and Loss statement (DTB 0000217-219) |
| KKK | | | Bonita Lakes Mall Profit and Loss statement (DTB 0000220-229) |
| LLL | | | Columbia Mall Profit and Loss statement (DTB 0000230-235) |
| MMM | | | Mall at Cortana Profit and Loss statement (DTB 0000236-242) |
| NNN | | | Eastern Hills Mall Profit and Loss statement (DTB 000243-249) |
| OOO | | | Hampshire Mall Profit and Loss statement (DTB 0000250-251) |

| NUMBER | DATE MARKED | DATE ADMITTED | DESCRIPTION |
|---|---|---|---|
| PPP | | | Holyoke Mall Profit and Loss statement (DTB 0000252-257) |
| QQQ | | | Inlet Square Mall Profit and Loss statement (DTB 0000258-263) |
| RRR | | | Palisades Center Mall Profit and Loss statement (DTB 0000264-271) |
| SSS | | | Parks at Arlington Mall Profit and Loss statement (DTB 0000272-279) |
| TTT | | | Sunrise Square Profit and Loss statement (DTB 000280-285) |
| UUU | | | Letter to Brown from Smith, 9-11-00 (DTB 000071-72) |
| VVV | | | Letter to Smith from Brown, 9-25-00 (DTB 000074) |
| WWW | | | Letter to Eastwood from Brown, 8-31-00 (DTB 000070) |
| XXX | | | Letter to Brown from Smith, 9-27-00 (DTB 000075-76) |
| YYY | | | Handwritten letter to Smith from Brown, 10-13-00 (DTB 000077-78) |
| ZZZ | | | Letter to Brown from Pastoral, 12-3-97 (DTB 0000054-56) |
| AAAA | | | Letter to Distributor, Metabolife Strategy: 2000 and Beyond, from Ellis, undated (DTB 000067) |
| BBBB | | | Gregory Locke's 2000 Amended U.S. Tax Return, dated April 8, 2002 |
| CCCC | | | Gregory Locke's 1999 Amended U.S. Tax Return, not dated |
| DDDD | | | Raywen Enterprises Amended Tax Return, not dated |
| EEEE | | | Raywen Enterprises 2000 U.S. Tax Return, dated April 8, 2002 |
| FFFF | | | Letter to Shareholders of Raywen Enterprises Containing Corporation Form 1120S Schedule K-1, dated February 4, 2002 |
| GGGG | | | Raywen Enterprises 1999 U.S. Income Tax Return, not dated |
| HHHH | | | Letter to Shareholders of Raywen Enterprises Containing Corporation Form 1120S Schedule K-1, dated February 4, 2002 |

EXHIBIT _A_ PAGE _19_

| NUMBER | DATE MARKED | DATE ADMITTED | DESCRIPTION |
|---|---|---|---|
| IIII | | | Greg Locke's Tax Forms for 1999 (GRL 0000035-70) |
| JJJJ | | | Greg Locke's Tax Forms for 2000 (GRL 0000071-90) |
| KKKK | | | Metabolife Monthly Sales and Consultant Report Form, August 1, 2000 (GRL 0000091-106) |
| LLLL | | | Schedule A to Consultant Agreement – Consultant Territory and Compensation Schedule for Greg Locke, August 18, 2000 (GRL 0000110-111) |
| MMMM | | | Metabolife Int. Rebate Reports for Greg Locke dated Oct.-Nov. 1999 (GRL 0000284-285) |
| NNNN | | | Commission Statement Oct. 99 for Greg Locke (GRL 0000142-143) |
| OOOO | | | Metabolife International, Inc., Independent Consultant Agreement (GRL 000107-111) |
| PPPP | | | Memo to Metabolife Independent Distributors from Metabolife International, Inc., 9-22-00 (GRL 000093-106) |
| QQQQ | | | Star Metabolife Statement of Revenue & Expenses – Income Tax Basis, Twelve Month Ended, 12-31-98 (GRL 0000088) |
| RRRR | | | Star Metabolife Statement of Revenue & Expenses – Income Tax Basis, Twelve Month Ended, 12-31-1999 (GRL 0000089) |
| SSSS | | | Star Metabolife Statement of Revenue & Expenses – Income Tax Basis, Twelve Month Ended, 12-31-00 (GRL 0000090) |
| TTTT | | | Raywen Statement of Revenue & Expenses 1999 (GRL 0000086-87) |
| UUUU | | | 1120S for Raywen Enterprises, 2000 (Federal tax return) (GRL 000071-85) |
| VVVV | | | Louisiana tax return for Mail Boxes, Etc., income tax return for 1999; franchise tax return for 2000 (GRL 0000064-70) |
| WWWW | | | U.S. tax return for Locke, 1999 (GRL 0000035-63) |
| XXXX | | | Letter to Locke from Barrington, 8-23-00 (GRL 0000031-32) |
| YYYY | | | Letter to Locke from Smith, 9-11-00 (GRL 000033-34) |
| ZZZZ | | | Metabolife International, Inc. Independent Consultant Agreement, unsigned (GRL 0000107-109) |

| NUMBER | DATE MARKED | DATE ADMITTED | DESCRIPTION |
|---|---|---|---|
| AAAAA | | | Metabolife International and BE Marketing Financial Report, December 31, 1991 (METGOLD 000462-000483) |
| BBBBB | | | Metabolife International and Subsidiary Financial Report (METGOLD 000338-000355) |
| CCCCC | | | Metabolife International and Subsidiary Financial Report, December 31, 2001 and 2000 (METGOLD 005131-005149) |
| DDDDD | | | Metabolife International, Inc. and Subsidiary Financial Report 12/31/00 |
| EEEEE | | | Chart indicating amounts plaintiffs would have earned under the Consultant Agreement (METGOLD 005702) |
| FFFFF | | | Contact, 1-2-02, Metabolife internal reports re selling Metaboloss Gold and unauthorized advertising (METGOLD 005021, 5026) |
| GGGGG | | | Phone Call Record, entry by Michelle Ituarte of Metabolife re selling Metaboloss Gold (METGOLD 001437-1438) |
| HHHHH | | | Letter to Sander from Coughlin regarding closing locations, 8-31-00 (METGOLD 001411) |
| IIIII | | | Coughlin's sales records (METGOLD 001449-1450, 1446) |
| JJJJJ | | | Mark Coughlin's 6189 order record, 10/99 – 12/00 (METGOLD 005043) |
| KKKKK | | | Mark Coughlin 11694 Commissions 1/99 – 7/00 (METGOLD 005044) |
| LLLLL | | | Reported Sales, Metabolife 356, Coughlin 11/99 – 8/00 (METGOLD 005126) |
| MMMMM | | | Contact record, 9-11-00, from Smith to Locke (METGOLD 004448) |
| NNNNN | | | Fax to Adamson from Locke, 7-29-98 (METGOLD 002141-2143) |
| OOOOO | | | Chinac Progress Report 2/8/00 (METGOLD 001752-1757) |
| PPPPP | | | Metabolife Distributor Application and Agreement, unsigned (METGOLD 002706-2711) |
| QQQQQ | | | Memo to Ellis from Goldstein regarding approval of brochure, 4-5-99 (METGOLD 001828-1830) |
| RRRRR | | | Memo to Agnew from Goldstein, 4-14-99 (METGOLD 001777-1780) |
| SSSSS | | | Letter to Goldstein from Rubens, 2-2-00, unsigned; Retail Location Application (METGOLD 001955-1962) |

| NUMBER | DATE MARKED | DATE ADMITTED | DESCRIPTION |
|---|---|---|---|
| TTTTT | | | Contact 186157, pages 1 and 3 (METGOLD 003564-3565) |
| UUUUU | | | Metabolife International, Inc. 6/20 Pay Plan (METGOLD 000138-141) |
| VVVVV | | | Metabolife Update, September 1998 (METGOLD 002847-2850) |
| WWWWW | | | Memo to All Premier Distributors from Petit, 11-19-98 (METGOLD 002799) |
| XXXXX | | | Memo to Premier Distributors from Retail Operations Dept., 12-1-98 (METGOLD 002800-2801) |
| YYYYY | | | Letter to Pitman from Rubens, 7-15-99 (METGOLD 910) |
| ZZZZZ | | | Letter to Pitman from Brown, 7-16-99 (METGOLD 00962) |
| AAAAAA | | | Letter to Pitman from Nabozny, 7-20-99 (METGOLD 001033) |
| BBBBBB | | | Letter to Independent Distributor from Moberly, undated (METGOLD 002753, 002757) |
| CCCCCC | | | Memo to Brown from Barrington, 10-15-99 (METGOLD 001032) |
| DDDDDD | | | Metabolife International, Inc. Distributor Application and Agreement Addendum, unsigned (METGOLD 002706-2711) |
| EEEEEE | | | Memo to Premier Distributors from Adamson, 12-1-98 (METGOLD 002802-2803) |
| FFFFFF | | | Emails from Brown to Eastwood, 4-18-00, 4-6-00, 4-4-00 (METGOLD 00856) |
| GGGGGG | | | Emails, 5-8-00 and 4-19-00 (METGOLD 000855) |
| HHHHHH | | | Emails from Brown to Eastwood, 5-15-00 and 5-9-00 (METGOLD 00854) |
| IIIIII | | | Reported Sales, Metabolife 356, Donald Brown #4625 (METGOLD 003807) |
| JJJJJJ | | | Walden Galleria Profit and Loss 1/99 – 9/00 (MJC 0000107-127) |
| KKKKKK | | | Employee Shift Change Report for 3753 Delaware, dated July 6, 2000 (MC 02963) |
| LLLLLL | | | Daily Sales and Deposit Reports for 3753 Delaware, dated July 6, 2000 and July 7, 2000 (MC 02964-2965) |
| MMMMMM | | | Metaboloss Gold Invoice No. 514 to Diane Coughlin (MC 02403-2404) |
| NNNNNN | | | 3753 Delaware Avenue Profit and Loss 4/00-9/00 (MJC 0000090-95) |

| NUMBER | DATE MARKED | DATE ADMITTED | DESCRIPTION |
|---|---|---|---|
| OOOOOO | | | Pyramid Mall Profit and Loss, 8/99-11/99 (MJC 0000096-99) |
| PPPPPP | | | Sangertown Square Profit and Loss 7/99–1/00 (MJC 0000100-106) |
| QQQQQQ | | | Coughlin's U.S. 1998 tax return (MJC 000001-8) |
| RRRRRR | | | Coughlin's U.S. 1999 tax return (MJC 000009-22) |
| SSSSSS | | | Coughlin's U.S. 2000 tax return (MJC 000023-28) |
| TTTTTT | | | Coughlin's U.S. 2000 Schedule C and Schedule SE (MJC 000029-38) |
| UUUUUU | | | Coughlin's 2000 New York Tax Return (MJC 000039-40) |
| VVVVVV | | | Expert Report of Brian P. Brinig, dated May 19, 2003 |
| WWWWWV | | | New Century Health Enterprises Inc. Business Loss Analysis, dated July 31, 2000 |
| XXXXXX | | | Mike Goldstein resume (MG 00870-872) |
| YYYYYY | | | Survival Services International, Inc. Breakdown on A/C #0849-682539 for 1998 (MG 0000232-233) |
| ZZZZZZ | | | Survival Services 1998 U.S. Tax Return (MG 0000223-231) |
| AAAAAAA | | | New Century Health Enterprises, Inc. Breakdown on A/C # 0454-649542 for 1998 (MG 0000219-222) |
| BBBBBBB | | | New Century Health Enterprises, Inc. 1998 U.S. Tax Return (MG 0000209-218) |
| CCCCCCC | | | W-2 for Goldstein from New Century Health, 1998 (MG 0000191-208) |
| DDDDDDD | | | Survival Services International, Breakdown on Main A/C # 19990454-649542 for 1999 (MG 0000172-180) |
| EEEEEEE | | | Survival Services 1999 U.S. Tax Return (MG 0000181-188) |
| FFFFFFF | | | New Century Health Enterprises, Inc. 1999 Tax Return (MG 0000162-171) |
| GGGGGGG | | | W-2 for Goldstein 1999 from New Century Health, 1999 U.S. Tax Return (MG 0000148-161) |
| HHHHHHH | | | New Century Health Enterprises, Inc. Business Loss Analysis, July 31, 2000 (MG 0000256-260) |
| IIIIIII | | | Survival Service 2000 U.S. Tax Return (MG 0000137-147) |



| NUMBER | DATE MARKED | DATE ADMITTED | DESCRIPTION |
|---|---|---|---|
| JJJJJJJ | | | New Century Health Enterprises, Inc. Breakdown on Main A/C #0454-649542 for 2000 (MG 0000131-136) |
| KKKKKKK | | | New Century Health Enterprises, Inc. 2000 U.S. Tax Return (MG 0000121-130) |
| LLLLLLL | | | W-2 for Goldstein 1999 from New Century Health, 2000 U.S. Tax Return (MG 0000107-120) |
| MMMMMM | | | New Century Health Enterprises, Inc. Breakdown on Main A/C #0454-649542 for 2001 (MG 0000101-106) |
| NNNNNNN | | | 1999 Balance Sheets for Metabolife International, Inc. (METGOLD 005307-5361) |
| OOOOOOO | | | 2000 Balance Sheets for Metabolife International, Inc. (METGOLD 005362-5472) |
| PPPPPPP | | | 2001 Balance Sheets for Metabolife International, Inc. (METGOLD 005473-5581) |
| QQQQQQQ | | | 2002 Balance Sheets for Metabolife International, Inc. (METGOLD 005582-5676) |
| RRRRRRR | | | Metabolife International, Inc. and Subsidiary Financial Report, December 31, 2002 and 2001 (METGOLD 005677-5694) |
| SSSSSSS | | | Metabolife International, Inc. and Alpine Health Products, Inc. Schedule of Combined Costs and Sales 2000 (METGOLD 005695-5696) |
| TTTTTTT | | | Metabolife International, Inc. and Alpine Health Products, Inc. Schedule of Combined Costs and Sales 2001 (METGOLD 005697-5698) |

EXHIBIT _A_ PAGE _24_

EXHIBIT B

## EXHIBIT B

## <u>WITNESS LIST</u>

1.   Scott Moberly
     Metabolife International, Inc.
     5643 Copley Drive
     San Diego, CA 92111-7903
     (858) 490-5222

2.   Michael Ellis
     Metabolife International, Inc.
     5643 Copley Drive
     San Diego, CA 92111-7903
     (858) 490-5222

3.   Michael Goldstein
     1670 South Elkhart Street
     Aurora, CO  80012-5713
     (303) 696-9147

4.   Donald Brown, Jr.
     9806 Chasefield Drive
     Rockwall, TX  75087-8753
     (972) 475-6514

5.   Gregory Locke
     351 Ratcliff Street
     Shreveport, LA  71104-5103
     (318) 219-0888

6.   Mark Coughlin
     5497 Mapleton Road
     Lockport, NY  14094-9295
     (716) 625-4402

7.   Michelle Carver
     7794 Orien Avenue
     La Mesa, CA  91941

8.   Kevin Johnson
     Address unknown as of the date of this document.

GT\6356831.1
103221-3

EXHIBIT _B_ PAGE 25

9.      Greg Eastwood
        Metabolife International, Inc.
        5643 Copley Drive
        San Diego, CA 92111-7903
        (858) 490-5222

## EXPERT WITNESSES

10.     Alan J. Cox, PH.D.
        National Economic Research Associates
        One Front Street, Suite 2600
        San Francisco, CA 94111
        (415) 291-1000


Dr. Cox is prepared to testify that Metabolife would have become bankrupt had it maintained multi-level marketing as its only channel for selling its product and that Plaintiffs' damages are minimal.